1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  CLAUDIA A. QUIROZ (CABN 254419)
   ANDREW F. DAWSON (CABN 264421)
5  CHRIS KALTSAS (NYBN 5460902)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7428
8       FAX: (415) 436-7234
        claudia.quiroz@usdoj.gov
9
   Attorneys for United States of America
10

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14

15  UNITED STATES OF AMERICA,              ) Case No. 15-cr-0234 CRB
                                           ) Case No. 16-cr-0225 CRB
16          Plaintiff,                      )
                                           ) **GOVERNMENT'S OPPOSITION TO**
17      v.                                  ) **DEFENDANTS' MOTION TO EXCLUDE**
                                           ) **EVIDENCE FROM ALEXANDER SOLIMAN**
18  DAVID MILLER and MINNESOTA              ) **AND VIN NGUYEN**
    INDEPENDENT COOPERATIVE, INC.,          )
19                                          )
                                           )
20          Defendants.                     )
                                           )
21  _____      )

22

23

24

25

26

27

28

The United States of America (the "government") opposes defendant David Miller's and defendant Minnesota Independent Cooperative's (collectively, "the defendants'") motion to exclude evidence the government plans to adduce from witnesses Alexander Soliman and Vin Nguyen. As explained below, the government anticipates that these witnesses will testify as to events directly within the scope of the alleged conspiracies. The testimony therefore does not implicate Federal Rule of Evidence ("Rule") 404(b). Even if it did, the government provided a protective 404(b) notice that alerted the defense to the nature of the government's anticipated evidence. Finally, the evidence at issue is extremely probative, and its evidentiary value is not substantially outweighed by a danger of prejudice or other dangers described in Rule 403.

## ARGUMENT

At the outset, the government notes that it provided notice to defendants regarding the nature of the evidence it anticipated introducing at trial. The government's 404(b) notice stated that the government did not "anticipate introducing any evidence subject to Rule 404(b)," as the evidence to be presented "is all evidence of the very acts and wide ranging conspiracies charged in the indictments." Dkt. No. 1819-1.[1] That evidence "includes, but is not limited to . . . [e]vidence related to Artur and Mihran Stepanyan's drug diversion operations, including the storage of prescription drugs, shipment of prescription drugs to MIC and elsewhere, invoices, emails, associated bank accounts, associated corporate entities, email accounts, telephone records and licensure status," as well as "[s]imilar evidence related to other suppliers, who have been identified in discovery." *Id*. The notice further included "MIC's corporate documentation, including but not limited invoices, pedigrees, emails, licensure status, and contracts." *Id*. The notice indicated that the government intends to adduce evidence concerning the "co-conspirators' use of documents containing false information, such as fraudulent invoices, false contracts, and other fraudulent business records, in order to facilitate their criminal activities." *Id.*

The testimony of Alexander Soliman and Vin Nguyen will bear on the precise topics foreshadowed in the government's notice, namely, the witnesses' respective drug diversion operations

---

[1] This opposition cites to the docket in criminal case number 15-0234 CRB to maintain consistency and avoid confusion.

and their relationship with the defendants, both in terms of the drugs they provided to the defendants and their respective business strategies. In addition to providing MIC with diverted pharmaceuticals, both Mr. Soliman and Mr. Nguyen will likely testify that they believe the defendants were involved in the creation of false paperwork in the names of the respective companies in order to distribute wholesale pharmaceuticals in California, because the defendants lacked the required license to do so. Mr. Nguyen will likely testify that defendant Miller asked Mr. Nguyen permission to use his company's (to wit, "Med X") California wholesaling license, and that Mr. Nguyen refused defendant Miller's request. Mr. Nguyen will testify that, despite his refusal, he later discovered that defendant Miller used Mr. Nguyen's California license anyway, and that defendant Miller invoiced thousands of dollars' worth of pharmaceuticals using the Med X name.

Mr. Soliman will likely testify to a similar story. In addition to providing defendants with diverted drugs, Mr. Soliman is expected to testify that defendant Miller used the name of Mr. Soliman's company, Apex Pharmaceuticals, to distribute wholesale pharmaceuticals using his license. Mr. Soliman is also expected to testify that, although this arrangement was non-consensual at first, he and defendant Miller worked with one another to use the Apex Pharmaceuticals name to distribute wholesale pharmaceuticals.

The testimony the government expects to elicit from the witnesses falls squarely within the notice the government provided to the defendants over two years ago, and it is directly relevant to the defendants' guilt. The witnesses are likely to testify as to the licensure status of the defendants, and Alexander Soliman's testimony is likely to include discussions of specific pieces of corporate documentation such as price lists and invoices, both of which concern Apex Pharmaceuticals' business with MIC and Miller. Both witnesses will testify that they believed defendants were selling diverted pharmaceuticals, and that during the period in which the defendants were dealing with Mr. Soliman and Mr. Nguyen, defendants did not appear to have a California wholesaling license.

As to the timing, both witnesses will testify to events within the scope of charged conspiracies. Count 14 alleges a conspiracy beginning "in or about September 2007." Mr. Soliman's testimony will cover acts occurring well into 2008. *See, e.g.*, California Board of Pharmacy Accusation, attached

hereto as Exhibit 1.[2] Ex. 1 ¶ 28 (revealing suspect invoices into 2008). Mr. Nguyen's relationship with Miller also continued into 2008 and beyond, and the false invoices from spring 2007 are "in or about" the commencement of the alleged conspiracy.

Even if the Court concludes that this evidence must be evaluated under Rule 404(b), the proffered evidence falls squarely within the Rule. "Other acts" evidence is admissible pursuant to Rule 404(b) so long as it is not offered as "propensity" evidence, and when:

> (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the act charged.

*United States v. Torres*, 824 F. App's 467, 469 (9th Cir. 2020) (quoting *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir.), *cert. denied*, 546 U.S. 1053 (2005)).

The evidence the government expects to elicit from the witnesses is not being offered to prove that defendants acted in accordance with a particular character trait. The government instead seeks to offer it as evidence of the defendants' motive, intent, knowledge, absence of mistake, and plan. Defendant Miller's continued requests to his contemporaries to use their California wholesale distribution licenses indicates that he knew he had an affirmative obligation to obtain a wholesale distribution license in California before transacting in wholesale pharmaceuticals, and it reflected his plan to use false paperwork to legitimize his activities—a plan pursued again to use B&Y Wholesale Distributors to cloak Miller's illicit dealings. That evidence supports a lack of mistake, knowledge, and intent with respect to the defendants' conspiracy to purchase and sell wholesale pharmaceuticals in California without a license. The evidence also indicates that defendants had a plan to surreptitiously transact in wholesale pharmaceuticals in California without the appropriate license. The anticipated testimony relating to Apex Pharmaceuticals and Med X shows that Miller planned to surreptitiously purchase and sell wholesale pharmaceuticals in California.

---

[2] The government does not plan to move Exhibit 1 into evidence at trial.  However, it anticipates that Mr. Soliman's testimony will similarly reflect that MIC's fraudulent use of the Apex license continued into 2008.

To that end, the evidence satisfies the test set forth in *Torres* and *Vo*. The evidence establishes a material point—that the defendants were aware of the licensure requirement in California and tried to evade it multiple times, in multiple ways. Those acts are also close in time to the beginning conspiracy, or firmly within the time that the conspiracy had operated. The testimony will establish that the defendants committed the "other acts" described herein. And finally, those acts are similar, or even part, of the criminal activity charged as they contemplate the distribution of wholesale pharmaceuticals without a license.

Third, the danger of prejudice does not substantially outweigh the probative value of the evidence at issue. The evidence is extremely probative of the defendants' intent and knowledge, as well as their lack of mistake as to the California licensure requirement at issue in trial. It is also probative of the conspiracy itself—defendant Miller's discussions with Mr. Soliman, in particular, will show how they agreed to use Apex Pharmaceuticals to evade the requirement that the defendants obtain a California wholesale distribution license.

The government accordingly respectfully requests that the Court deny defendants' motion to exclude.

DATED:  January 16, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


        /s/
CLAUDIA A. QUIROZ
ANDREW F. DAWSON
CHRIS KALTSAS
Assistant United States Attorneys