STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CLAUDIA QUIROZ (CABN 254419)
ANDREW F. DAWSON (CABN 264421)
CHRIS KALTSAS (NYBN 5490602)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-6753
    Email: claudia.quiroz@usdoj.gov
           andrew.dawson@usdoj.gov
           chris.kaltsas2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID MILLER and MINNESOTA INDEPENDENT COOPERATIVE, INC.,<br><br>    Defendants. | No. CR 15-234 CRB<br>No. CR 16-225 CRB<br><br>**GOVERNMENT'S BRIEF REGARDING FRAUD INSTRUCTIONS** |

      The government submits this brief in response to Defendants' Revised Proposed Jury Instructions. Dkt. No. 1817. More specifically, the government submits this brief in response to Defendants' proposed instructions 8 through 14, which all address the pending fraud counts. In sum, Defendant's proposed instructions should be rejected in favor of well-established instructions that have been repeatedly affirmed by the Ninth Circuit. Of particular concern are Defendants' proposed instructions 12 and 14, which are in irreconcilable conflict with the Ninth Circuit's precedent as to the materiality standard in fraud cases. Relying on an anomalous decision out of the Eleventh Circuit,

1

Defendants propose that the Court invite the jury to ponder the existential nature of the victims' economic transaction and to identify the "essence" of that transaction. *See* Proposed Instructions No. 12 and 14 (Dkt. No. 1817), at 20, 22. The jury should not be asked to pass metaphysical judgment on what constitutes the "essence" of simple purchases. To do so would be in direct conflict with the purpose of the materiality requirement, which requires only proof that the misrepresentation "has a natural tendency to influence, or [is] capable of influencing," a person to part with money or property. *United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (citations omitted). In effect, Defendant is asking this Court to add a new (and confusing) element to the standard fraud instructions. There is no basis for such an addition. While a defendant is entitled to an instruction on the theory of the defense, "he is not entitled to an instruction that misstates the law." *United States v. George*, 420 F.3d 991, 1000 (9th Cir. 2005) (citation omitted).

Rather than import confusing language from other circuits that conflicts with Ninth Circuit precedent, the government suggests looking to language from both this Court's prior order in *United States v. Bogucki*, 2019 WL 1024959 (March 4, 2019 N.D. Cal.) (Breyer, J.), and from *United States v. Lindsey*, 850 F.3d 1009, (9th Cir. 2017), which is the Ninth Circuit's most recent precedential opinion regarding materiality.

    **I.**    **Defendants' "Benefit of the Bargain" Proposed Instructions Are Inconsistent with Ninth Circuit Law.**

Defendants ask this court to have the jury assess "the benefit of [th]e bargain" and "the essence of the bargain" with regard to purchases of prescription drugs. The first instance of this request arises in Proposed Jury Instruction No. 12, entitled "Mail and Wire Fraud—Benefit of the Bargain," and the second instance arises in Proposed Jury Instruction No. 14, which would instruct the jury that a material misrepresentation must go "to the very essence of the bargain between MIC and its customer." Dkt. 1817, at 20 and 22. A close analysis of Defendants' logic reveals why these requests amount to a proposed wholesale revision to fraud law in the Ninth Circuit. Because the proposals conflict with Ninth Circuit precedent, they must be rejected.

In support of Defendants' "Benefit of the Bargain" instruction, the lead citation is to *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir. 2016). *Takhalov*, which has never been cited by the

Ninth Circuit, is easily distinguishable from this case. The defendants in *Takhalov* were accused, in part, of hiring "women . . . to pose as tourists, locate visiting businessmen, and lure them into the defendants' bars and nightclubs." *Id.* at 1310. Once there, the defendants argued that the "victims" were not misled in any way, but rather "got what they paid for—nothing more, nothing less." *Id.* at 1311. The misrepresentation, according to defendants, may have led the victims to the bar, but it did not make them drink. Defendants therefore requested an instruction that the failure to disclose the financial arrangement between the defendants and the women "is not sufficient to convict a defendant of any offense." *Id.* The district court declined to do so, and the defendants were convicted.

The Eleventh Circuit reversed, holding that the "lies" in question, which lured the victims into the bars and nightclubs, did not relate to the nature of the transactions in question, which occurred well downstream of the misrepresentation. More specifically, the Eleventh Circuit held a scheme to defraud "refers only to the nature of the bargain itself," as opposed to some antecedent event that may have been in the causal chain leading up to the transaction. 827 F.3d at 1312. Of particular relevance here, the *Takhalov* court specifically distinguished the facts of that case from traditional property fraud—such as this case—in which a defendant "might lie about the characteristics of the good." *Id.* With misrepresentations as to the good, "the defendant has lied about the nature of the bargain and thus . . . has committed wire fraud." *Id.*

At the outset, it is important to note that the concern identified in *Takhalov* would not arise under the Ninth Circuit's model instructions. The model instructions make clear that in order for a misrepresentation to be material, that misrepresentation itself must have "a natural tendency to influence . . . a person to part with money or property." Ninth Circuit Model Criminal Jury Instruction (2022) No. 15.35. Thus, an antecedent lie that simply leads a victim into a bar does not, in itself, "influence" a person to part with money or property.

But more concerningly, and as Defendants' proposed instructions implicitly concede, to give the requested "Benefit of the Bargain" instruction would also necessitate a corresponding modification to the Ninth Circuit's authorized materiality instruction. Indeed, Defendants propose that the materiality instruction be transformed to apply only to misrepresentations that "go[] to the very essence of the bargain between MIC and its customer." Proposed Instruction No. 14, Dkt. 1817, at 22. Such an

3

instruction is flatly inconsistent with Ninth Circuit Precedent. *See Lindsay*, 850 F.3d at 1013 ("In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.") (citations omitted). The request for the altered materiality instruction betrays that while Defendants' requests are couched in terms of "deprivation of money or property," as opposed to materiality, the real effect is to invite the jury to pass judgment on the nature of the misrepresentations and whether they "mattered" sufficiently to affect the nature of the bargain.

The government notes as well that, even if there were room to modify the materiality instruction, Defendants' proposed instructions are hopelessly confusing. The phrase "benefit of the bargain" is undefined and invites unstructured jury speculation. Even worse is the phrase "very essence of the bargain." Proposed Instruction No. 12. It is hardly obvious that a bargain even has an "essence," let alone whether a jury would know how to identify it. Rather than muddle the jury with newly minted and confusing terms, the Court should give the standard fraud instructions.

## II. Defense Theory of the Case Instruction

As noted above, the government objects to any instruction that is inconsistent with Ninth Circuit law. Moreover, the government believes that the pattern instructions accurately state the law and will allow Defendants the necessary room to argue in closing. Therefore, at least as to the concerns identified by Defendants thus far, the government does not believe a theory-of-the-case instruction is necessary.

If the Court is inclined to give a supplement instruction, the government notes that a number of the cases cited by Defendants have been considered by both this Court and by the Ninth Circuit, which has explained how those cases align with Ninth Circuit precedent. For example, Defendants cite to *Universal Health Services, Inc. v. United State ex rel. Escobar*, 579 U.S. 176, 193 n.5 (2016). *Escobar* considered materiality under the False Claims Act, which the Court specified was "not an all-purpose antifraud statute." *Id.* at 194. The case concerned fraud in federal contracting, and the Court held "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Id.*

While Defendants ignore the context of *Escobar* and instead pluck a solitary citation to a New

4

York Court of Appeals case from the footnotes, the Ninth Circuit has grappled directly with *Escober* and its effect on materiality in wire fraud. Of note, the Ninth Circuit did not adopt Defendants' interpretation of *Excobar* and did not impose a new "essence of the bargain" instruction. However, it did address considerations relevant to Defendants' concerns and explained that "industry practice" can be relevant to assessing materiality. 850 F.3d at 1016. For example, it explained:

> [S]uppose a defendant is charged with wire fraud for falsely stating on a loan application that he was married. In such a case, it would be admissible for a defense expert to testify that, while mortgage applications usually ask about marital status, the general practice in the industry is to ignore marital status when making lending decisions. The defendant could then argue in closing that his false statement about marriage was immaterial, and so the elements of wire fraud have not been proven.

*Id.* This Court has similarly recognized that "materiality must be assessed in the context in which the communications occurred; in consequence, industry practices, agreements between the parties, and other information known to the parties at the time of the allegedly false statements are relevant to assessing those statements' materiality." *Bogucki*, 2019 WL 1024959, at *2 (Breyer, J.).

Although drawn from different contexts, these principles perform the same limiting function animating *Takhalov*. Ancillary misrepresentations entirely unrelated to the transaction are immaterial even if there is some potential causal nexus with the transaction. Just as the *Takhalov* misrepresentation regarding the women outside the bar was found to be irrelevant to the subsequent transaction, the marital status of an applicant in *Lindsay* was arguably irrelevant even if the question was included on an application. If the Court is inclined to give a theory of the case instruction, the government proposes that it do so consistent with *Lindsey*, instructing that the misrepresentation must relate to the transactions at issue rather than ancillary matters. Such an instruction would ensure that the jury remains focused on the transactions in question—the purchases of prescription drugs—rather than extraneous matters. But such an instruction would avoid the confusion and conflict that would arise with the assessment of the "essence" or "benefit" of the bargain.

### III. Defendants' Various Other Fraud Instructions Should Be Rejected.

In addition to a modified version of the Court's pattern fraud instructions, Defendants have proposed a variety of other instructions. These instructions are either unnecessary or confusing, and they should be rejected.

*First*, Defendants propose a "Scheme or Plan to Defraud" instruction that would require the government to prove that "the scheme or plan, if completed as intended, would cause harm to a property interest of the alleged victim." Dkt. No. 1817. The phrase "would cause harm to a property interest" is hopelessly confusing. To the extent Defendants want an instruction clarifying that the defendants' intent must be to "obtain[] money or property," then that requirement is already included in the pattern instruction. To the extent Defendants request that the jury be instructed to make a finding of ultimate harm, or net financial loss, to a victim, that argument is foreclosed by Ninth Circuit law. *See United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993) (endorsing instruction that "a defendant's belief that the victim of the fraud will be paid in the future or will sustain no economic loss is no defense to the crimes charged . . . ").

*Second*, Defendants include two instructions drawn from *United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021). Neither relates to the facts or theory of this case. Proposed Instruction No. 10 asks the Court to instruct the jury that accurate information about the drugs "does not constitute property under the mail and wire fraud statutes." Such an instruction is unnecessary because the government has not and will not argue that the information itself qualifies as property. Instead, this is a traditional property fraud case in which the victims spent money in exchange for prescription drugs. Proposed Instruction No. 11 asks the Court to instruct the jury that the right to control economic decisions is not property. Again, the government has not and will not argue to the contrary.

*Third*, Defendants propose that the jury be instructed that "[t]o prove an intent to cheat, the government must establish that the defendant intended to cause loss or other harm to the alleged victim's money or property." Proposed Instruction No. 13, Dkt. No. 1817, at 21. Once again, to the extent Defendants want to ensure that the jury is instructed that the goral of the scheme must be to "obtain[] money or property," that requirement is already included in the pattern instructions. But to the extent Defendants are again requesting that the jury be instructed to make a finding of ultimate harm, or net financial loss, that argument is foreclosed. *See United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993) (endorsing instruction that "a defendant's belief that the victim of the fraud will be paid in the future or will sustain no economic loss is no defense to the crimes charged . . .").

//

### IV.     Conclusion

At its core, this is a simple case. Defendants lied to their customers about the nature of the prescription drugs they were selling. Defendants' customers paid money for those drugs. It is a classic fraud allegation. Defendants' attempts to overcomplicate an otherwise simple case, and thereby confuse the jury as to what the government must prove, should be rejected. The Ninth Circuit's pattern instructions are more than sufficient for this case.

DATED: January 20, 2023                                Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

　　　　　/s/
ANDREW F. DAWSON
CLAUDIA QUIROZ
CHRIS KALTSAS
Assistant United States Attorneys

FIRST AMENDED PROPOSED JURY INSTRUCTIONS
CR 15-234 CRB; CR 16-225 CRB

1